ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

FILED IN OPEN COURT
U.S.D.C. - Atlanta

JUN - 9 2026

KEVIN P. WEIMER, Clerk
By Deputy Clerk

UNITED STATES OF AMERICA

*v.*

PATRICK ANDRAOUS,
A/K/A JERRY MOUDILOS,
A/K/A PATRICK THEODORE,
A/K/A LUCAS MALEK,
A/K/A JONATHAN DUVAL

Criminal Indictment

No. 1 : 26 CR - 0266

The Grand Jury charges that:

**COUNT ONE**
**Wire Fraud**
**(18 U.S.C. § 1343)**

1. From on or about December 19, 2024, to in or about March 2025, in the Northern District of Georgia and elsewhere, the defendant, PATRICK ANDRAOUS, a/k/a "Jerry Moudilos," a/k/a "Patrick Theodore," a/k/a "Lucas Malek," a/k/a "Jonathan Duval," aided and abetted by, and aiding and abetting, others unknown to the Grand Jury, knowingly devised and intended to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and by omission of material facts, and for the purpose of executing the scheme and artifice to defraud, with the intent to defraud, caused to be transmitted by means of wire communications in interstate and foreign commerce certain writings, signs, signals, pictures, and sounds.

*Background*

2. At all times relevant to this Indictment:

a. ANDRAOUS was a citizen of the United States and Canada, residing in Canada.

b. Corpay, Inc. ("Corpay") was a corporate payments company that helped businesses and consumers pay expenses in a simple, controlled manner. The company offered a variety of services, including assistance with paying supplies and employee expenses, fuel and fleet payments, vendor payments, cross-border payments, and travel and lodging expenses. Corpay was headquartered in Atlanta, Georgia, and had an office in Covington, Louisiana.

c. Corpay, for its cross-border solutions, including international payments, held 100-percent-owned subsidiaries in other countries, including in Canada.

d. Cambridge Mercantile Corp. ("Cambridge") was a 100-percent-owned subsidiary of Corpay that operated in Canada and was part of Corpay's cross-border solutions business.

e. Corpay's Chief Financial Officer and Chief Accounting Officer worked in Corpay's Atlanta, Georgia office. Accounting ledgers for Corpay's global business are reported to the Chief Accounting Officer and Corpay's subsidiaries' financials roll up to Corpay as the parent company. The financial data for Corpay and its

subsidiaries was used by Corpay to, among other things, understand financial performance, plan for future market expectations, and make financial decisions.

f. Corpay's Chief Accounting Officer was involved in bad debt reporting to, among other things, manage risk and determine whether a debt should be written off.

g. Corpay's treasury team worked in Corpay's Covington, Louisiana office. The treasury team was responsible for transferring funds between Corpay's and its subsidiaries' bank accounts. Corpay regularly coordinated the movement of funds between bank accounts for Corpay and its subsidiaries, like Cambridge, to meet business needs. Corpay's computer network configuration routed the treasury team's internet traffic from its Covington, Louisiana office through servers in the Northern District of Georgia before traveling to the requested internet destination.

h. Coinsquare was a cryptocurrency exchange that operated in Canada.

i. Netcoins was a cryptocurrency exchange that operated in Canada.

j. Stake.com was an online casino website offering users the opportunity to play casino games and bet on sports. Stake.com allowed customers to transfer virtual currency, such as Bitcoin, to Stake.com accounts.

*Scheme to Defraud*

3. ANDRAOUS, using the aliases "Jerry Moudilos" and "Patrick Theodore," defrauded Corpay and Cambridge by opening a corporate account at Cambridge and duping Corpay and Cambridge into providing him approximately $5.5MM United States Dollars ("USD").

4. In or about December 2024, ANDRAOUS, using the alias "Jerry Moudilos," opened a corporate account with Cambridge under the name of 9380-8046 Quebec Inc. ("98Q"). In the account application, ANDRAOUS, using the alias "Jerry Moudilos," stated that he controlled a Desjardin account that ended in 0290 (the "x0290 account"). In communications with Cambridge, ANDRAOUS, using the alias "Jerry Moudilos," falsely claimed that:

a. 98Q was a wholesaler of hand protection products;

b. 98Q's revenue was in Canadian Dollars ("CAD") but 98Q bought most of its goods in the United States; and

c. 98Q planned to convert CAD to USD to send USD to vendors in the United States, China, and Portugal.

5. On or about December 19, 2024, Cambridge, via email, requested from "Jerry Moudilos" a voided check for the bank account for 98Q. ANDRAOUS, using the alias "Jerry Moudilos," emailed a voided check for the x0290 account. Although ANDRAOUS, using the alias "Jerry Moudilos," had previously indicated that "Jerry Moudilos" controlled the x0290 account in the corporate application for 98Q, the account actually belonged to a different

company, 9519-5475 Quebec Inc. ("95Q"), with the listed owner of "Patrick Theodore." In truth, ANDRAOUS controlled 98Q, 95Q, and the x0290 account, and he was using the alias "Patrick Theodore," in addition to the alias "Jerry Moudilos."

6. Between January 7, 2025, and March 6, 2025, ANDRAOUS, using the alias "Jerry Moudilos," through 98Q, instructed Cambridge to electronically debit the x0290 account, in total, for approximately $5,545,418.55 USD to obtain other currency (Euros or CAD), with the intention of obtaining the currency without paying for it. When Cambridge attempted to electronically debit the x0290 account, the funds initially appeared to transfer into Cambridge's bank account as tentative credits and the corresponding currency was obtained and directed to financial accounts specified by ANDRAOUS. But after these transactions occurred, all the electronic debits from the x0290 account to Cambridge bounced, were returned, or were dishonored, meaning that Cambridge ultimately received no payment despite having provided ANDRAOUS the currency he requested. Through this scheme, ANDRAOUS fraudulently obtained currency for himself with Corpay and Cambridge being the entities having paid for that currency.

7. As part of the scheme to defraud, between on or about February 3, 2025, and on or about March 6, 2025, ANDRAOUS fraudulently caused to be transferred the equivalent of approximately $5.1MM USD from Cambridge to a Netcoins account held in the name of 98Q (the "98Q Netcoins account").

8. As part of the scheme to defraud, on or about February 27, 2025:

    a. ANDRAOUS, using the alias "Jerry Moudilos," caused Cambridge to transfer $937,850.00 CAD from a Cambridge Bank of America (Canada) account to the 98Q Netcoins account.

    b. Cambridge emailed the Corpay treasury team requesting $40MM USD that day and another $10MM USD the day after to fulfill Cambridge's financial obligations for those days.

    c. Corpay, through its treasury team, electronically transferred, via online banking, $40MM USD from a Corpay bank account at PNC Bank to a Cambridge bank account at Bank of America.

    d. Corpay, through its treasury team, electronically scheduled, via online banking, a $10MM USD transfer from a Corpay bank account at PNC Bank to a Cambridge bank account at Bank of America for February 28, 2025.

9. As part of the scheme to defraud, on or about February 28, 2025:

    a. ANDRAOUS, using the alias "Jerry Moudilos," caused Cambridge to transfer $ 1,458,100.00 CAD from a Cambridge Bank of America (Canada) account to the 98Q Netcoins account.

    b. Based on the online banking instructions provided by Corpay on February 27, 2025, $10MM USD was transferred from a Corpay bank account at PNC Bank to a Cambridge bank account at Bank of America.

*Execution of the Scheme to Defraud*

10. On or about February 27, 2025, in the Northern District of Georgia and elsewhere, the defendant, PATRICK ANDRAOUS, a/k/a "Jerry Moudilos," a/k/a "Patrick Theodore," a/k/a "Lucas Malek," a/k/a "Jonathan Duval," aided and abetted by, and aiding and abetting, others known and unknown to the Grand Jury, did, with the intent to defraud, for the purpose of executing the above-described scheme, cause to be transmitted by means of wire communications in interstate and foreign commerce certain writings, signs, signals, pictures, and sounds, namely: Corpay, via online banking, electronically transferring $40MM USD from a Corpay bank account at PNC Bank to a Cambridge bank account at Bank of America, and electronically scheduling a $10MM USD transfer from a Corpay bank account at PNC Bank to a Cambridge bank account at Bank of America for February 28, 2025.

All in violation of Title 18, United States Code, Sections 1343 and 2.

**COUNTS TWO THROUGH SIX**
**Concealment Money Laundering**
**(18 U.S.C. § 1956(a)(1)(B)(i))**

11. The Grand Jury realleges and incorporates by reference the factual allegations contained in paragraphs 2 through 9 of this Indictment here.

12. Between on or about February 5, 2025, and on or about March 6, 2025, ANDRAOUS converted a portion of the proceeds fraudulently obtained from Corpay and Cambridge stored in the 98Q Netcoins account to approximately

57.7 Bitcoin and sent that Bitcoin to a Bitcoin wallet with an address beginning with bc1qte (the "bc1qte wallet").

13. On or about the dates set forth in the following table, in the Northern District of Georgia and elsewhere, the defendant, PATRICK ANDRAOUS, a/k/a "Jerry Moudilos," a/k/a "Patrick Theodore," a/k/a "Lucas Malek," a/k/a "Jonathan Duval," aided and abetted by, and aiding and abetting, others unknown to the Grand Jury, did knowingly conduct and attempt to conduct a financial transaction in and affecting interstate and foreign commerce, that is, the financial transaction described below, which involved the proceeds of a specified unlawful activity, that is, wire fraud, knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, and knowing that the transaction was designed in whole and in part to conceal and disguise the nature, location, source, ownership and control of the proceeds of said specified unlawful activity:

| *Count* | *Date* | *Financial Transaction* |
|---|---|---|
| 2 | 2/18/2025 | Transfer of approximately 7.48498556 Bitcoin (valued at approximately $715,160 USD at the time of the transaction) from the bc1qte wallet to a Coinsquare account in the name of 95Q with the authorized user "Patrick Theodore" (the "95Q Coinsquare account"). |

| *Count* | *Date* | *Financial Transaction* |
|---|---|---|
| 3 | 2/18/2025 | Sale of approximately 7.48 Bitcoin from the 95Q Coinsquare account for approximately $999,589.24 CAD. |
| 4 | 2/18/2025 | Transfer of approximately $994,888.62 CAD from the 95Q Coinsquare account to the x0290 account. |
| 5 | 2/21/2025 | Transfer of approximately 12.0 Bitcoin from the bc1qte wallet to a Bitcoin wallet with an address beginning with bc1qt5. |
| 6 | 3/6/2025 | Transfer of approximately 13.24 Bitcoin from the bc1qte wallet to a Bitcoin wallet with an address beginning with bc1qu9. |

All in violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 2.

## COUNTS SEVEN THROUGH NINE
**Transactional Money Laundering**
**(18 U.S.C. § 1957)**

14. The Grand Jury realleges and incorporates by reference the factual allegations contained in paragraphs 2 through 9 and 12 of this Indictment here.

15. On or about the dates set forth in the table below, in the Northern District of Georgia and elsewhere, the defendant, PATRICK ANDRAOUS, a/k/a "Jerry Moudilos," a/k/a "Patrick Theodore," a/k/a "Lucas Malek," a/k/a "Jonathan Duval," aided and abetted by, and aiding and abetting, others unknown to the Grand Jury, did knowingly engage in and attempt to engage in a monetary transaction in criminally derived property of a value greater than $10,000 USD, that is, the deposit, withdrawal, transfer, and exchange, in and affecting interstate and foreign commerce, of funds and monetary instruments by, through, and to a financial institution, namely, the monetary transactions described below, such property having been derived from a specified unlawful activity, namely, wire fraud:

| *Count* | *Date* | *Monetary Transaction* |
|---|---|---|
| 7 | 2/18/2025 | Transfer of approximately 7.48498556 Bitcoin (valued at approximately $715,160 USD at the time of the transaction) from the bc1qte wallet to the 95Q Coinsquare account. |
| 8 | 2/18/2025 | Exchange of approximately 7.48 Bitcoin (valued at approximately $700,724 USD at the time of the transaction) from the 95Q Coinsquare account for approximately $999,589.24 CAD. |

| *Count* | *Date* | *Monetary Transaction* |
|---|---|---|
| 9 | 2/18/2025 | Transfer of approximately $994,888.62 CAD from the 95Q Coinsquare account to the x0290 account. |

All in violation of Title 18, United States Code, Sections 1957 and 2.

## COUNT TEN
## Obstruction of Justice
## (18 U.S.C. § 1503)

16. The Grand Jury realleges and incorporates by reference the factual allegations contained in paragraphs 2 through 9 and 12 of this Indictment here.

17. On or about June 16, 2025, after ANDRAOUS fraudulently obtained the proceeds from Corpay and Cambridge, some of those proceeds, approximately 3 Bitcoin (approximately $326,525.00 USD at that time), were transferred to an account at Stake.com belonging to "Lucas Malek," which was an alias used by ANDRAOUS.

18. Federal law enforcement, through tracing Bitcoin proceeds, learned of the "Lucas Malek" Stake.com account and, on or about June 17, 2025, a federal law enforcement agent involved in the federal grand jury investigation in this case ("Agent-1") issued a freeze request to Stake.com to prevent the proceeds from being moved from that account. Stake.com honored the freeze request but the proceeds had already been consumed on the platform and only approximately $0.50 USD in virtual currency was in the account.

19. In executing the freeze request, Stake.com provided to the accountholder the contact information for the law enforcement agent that requested the freeze, Agent-1.

20. After the Stake.com account was frozen, ANDRAOUS, using the alias "Jonathan Duval," contacted Agent-1 approximately six times by telephone and (i) provided false information about himself, the Stake.com account, and the Bitcoin that was deposited into the Stake.com account, and (ii) sought information from Agent-1 about the investigation under the pretense of purportedly wanting to help Agent-1.

21. From on or about June 23, 2025, until on or about September 23, 2025, in the Northern District of Georgia and elsewhere, the defendant, PATRICK ANDRAOUS, a/k/a "Jerry Moudilos," a/k/a "Patrick Theodore," a/k/a "Lucas Malek," a/k/a "Jonathan Duval," aiding and abetting, and aided and abetted by, others unknown to the Grand Jury, did corruptly influence, obstruct, and impede and endeavor to influence, obstruct, and impede the due administration of justice in the federal grand jury investigation for this case in the Northern District of Georgia as described above.

All in violation of Title 18, United States Code, Sections 1503 and 2.

**COUNT ELEVEN**
**Witness Tampering**
**(18 U.S.C. § 1512(b)(3))**

22. The Grand Jury realleges and incorporates by reference the factual allegations contained in paragraphs 2 through 9, 12, and 17 through 20 of this Indictment here.

23. From on or about June 23, 2025, until on or about September 23, 2025, in the Northern District of Georgia and elsewhere, the defendant, PATRICK ANDRAOUS, a/k/a "Jerry Moudilos," a/k/a "Patrick Theodore," a/k/a "Lucas Malek," a/k/a "Jonathan Duval," aiding and abetting, and aided and abetted by, others unknown to the Grand Jury, did knowingly and willfully corruptly persuade and attempt to corruptly persuade Agent-1 by providing false information with the intent to hinder, delay, and prevent the communication to a law enforcement officer, Agent-1, of information relating to the commission and possible commission of a Federal offense, namely, wire fraud, concealment money laundering, and transactional money laundering.

All in violation of Title 18, United States Code, Sections 1512(b)(3) and 2.

**Forfeiture**

24. Upon conviction of the offense alleged in Count One of this Indictment, the defendant, PATRICK ANDRAOUS, a/k/a "Jerry Moudilos," a/k/a "Patrick Theodore," a/k/a "Lucas Malek," a/k/a "Jonathan Duval," shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 982(a)(2)(A), any property constituting, or derived from, proceeds obtained, directly or indirectly, as a result of the offense, including, but not limited to, the following:

a. CRYPTOCURRENCY: 11.28805315 Bitcoin seized from wallet ending t5te.

b. MONEY JUDGMENT: A sum of money in United States currency, representing the amount of proceeds obtained as a result of the offense alleged in Count One of this Indictment.

25. Upon conviction of one or more of the offenses alleged in Counts Two through Nine of this Indictment, the defendant, PATRICK ANDRAOUS, a/k/a "Jerry Moudilos," a/k/a "Patrick Theodore," a/k/a "Lucas Malek," a/k/a "Jonathan Duval," shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 982(a)(1), any property, real or personal, involved in the offense, or any property traceable to such property, including, but not limited to, the following:

a. CRYPTOCURRENCY: 11.28805315 Bitcoin seized from wallet ending t5te.

b. MONEY JUDGMENT: A sum of money in United States currency, representing the amount of proceeds obtained as a result of the offenses alleged in Counts Two through Nine of this Indictment.

26. Upon conviction of one or more of the offenses alleged in Counts Ten through Eleven of this Indictment, the defendant, PATRICK ANDRAOUS, a/k/a "Jerry Moudilos," a/k/a "Patrick Theodore," a/k/a "Lucas Malek," a/k/a "Jonathan Duval," shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offenses, including, but not limited to, the following:

a. CRYPTOCURRENCY: 11.28805315 Bitcoin seized from wallet ending t5te.

b. MONEY JUDGMENT: A sum of money in United States currency, representing the amount of proceeds obtained as a result of the offenses alleged in Counts Ten through Eleven of this Indictment.

27. If any property subject to forfeiture, as a result of any act or omission of the defendant:

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the Court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty,

the United States intends, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of said defendant up to the value of the forfeitable property.

A True BILL

FOREPERSON

THEODORE S. HERTZBERG
*United States Attorney*

SAMIR KAUSHAL
*Assistant United States Attorney*
Georgia Bar No. 935285

600 U.S. Courthouse
75 Ted Turner Drive SW
Atlanta, GA 30303
404-581-6000; Fax: 404-581-6181